

November 27, 2013

**VIA ECF AND HAND DELIVERY**
Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007-1312

      RE:    *In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.*, 12-md-2335-LAK (S.D.N.Y.)

Dear Judge Kaplan:

      Plaintiffs Ohio Police & Fire Pension Fund, School Employees Retirement System of Ohio (together, the "Ohio Funds"), and Southeastern Pennsylvania Transportation Authority ("SEPTA") (collectively "Plaintiffs") respectfully oppose Defendants' motion to compel.  Plaintiffs have not "refus[ed] to produce" documents that they promised to produce.  Instead, Plaintiffs have collectively produced more than 2 million pages of documents consistent with the Court's holdings to date on the scope of discovery in these cases.  Plaintiffs have also set aside a relatively small percentage of documents which Plaintiffs understand the October 24, 2013 Order [Dkt. No. 299] (the "Order") has deemed to be irrelevant or overbroad while Plaintiffs' motion for a protective order is *sub judice*.  Those other documents would be available for production reasonably quickly after a decision on that motion for a protective order, should the Court's guidance so dictate.  Plaintiffs' reservation of likely nondiscoverable documents pending determination of the protective order motion does not delay the discovery process, and is in fact intended to reduce delay and cost.

      Plaintiffs communicated each of these points during the parties' meet and confer last week,[1] after repeatedly setting forth their understanding of the Order's application to these cases.  Indeed, Plaintiffs did not understand BNYM to disagree that all involved—the Court included—would benefit from the parties' revisiting the issue after a ruling (expected very soon) on Plaintiffs' motion for a protective order.[2]  Plaintiffs are thus surprised by both the timing and tenor of BNYM's motion, in which BNYM accuses Plaintiffs of "sharp . . . practices" and withholding "an extraordinary range of documents."  This simply is not true, as BNYM knows from the parties' communications and Plaintiffs' own production.  BNYM appears to have rushed to file this motion while Plaintiffs' motion for a protective order is pending, despite having just received 2 million pages of Plaintiffs' documents to review.  That is not an appropriate use of the Court's or the parties' time and resources, and Defendants cite no apposite authority to the contrary.

      In mid-September, Plaintiffs provisionally agreed to run more than 130 search terms on the electronically stored information ("ESI") of certain document custodians and other sources of ESI.  Plaintiffs did not concede the relevance of the search terms, and at the time, re-stated their position and

---

[1] *See, e.g.,* Letter from Daniel E. Seltz to Andrew C. Shen, dated November 21, 2013 (Exh. G to Dkt. No. 334).
[2] *See, e.g.,* Letter from Andrew C. Shen to Daniel E. Seltz, dated November 21, 2013 (Exh. F to Dkt. No. 334), at 3, in which BNYM indicates that it "reserves all rights," without disagreeing with Plaintiffs' essential point that the parties should revisit the issue after a ruling on Plaintiffs' motion for a protective order.  A hearing on that motion will take place shortly.
1142734.4

Honorable Lewis A. Kaplan
November 27, 2013
Page 2

concern that the list "will yield an unduly burdensome and unreasonable number of nonresponsive and irrelevant results." Exh. B to Dkt. No. 334, at 6. Nevertheless, and to avoid burdening the Court with motion practice, Plaintiffs worked diligently to gather and review documents that hit upon the search terms. Plaintiffs' representation, in opposing BNYM's prior motion to compel, that "Plaintiffs have agreed to produce an extraordinary range of documents," was—and demonstrably remains—true. Indeed, even prior to BNYM's last motion to compel, Plaintiffs had already produced hundreds of thousands of pages of documents.

On October 24, 2013, Judge Cott denied, in substantive part, the motions to compel brought by BNYM against several of the named plaintiffs in this action. *See* Order [Dkt. No. 299]. As to the securities plaintiffs, who had declined to run the 130+ search terms mentioned above, Judge Cott held that neither "documents including the term 'best execution' that have nothing to do with BNYM" nor "documents pertaining to or involving Plaintiffs' understanding of other companies' FX [foreign exchange] practices" are relevant. *Id.* at 5. This Court denied BNYM's objections to that Order on November 19, 2013. *See* Dkt. No. 330.

In the days following the Order, Plaintiffs repeatedly informed Defendants of their understanding that the Order determined the proper scope of discovery for the consolidated litigation as a whole, and that the rationale behind it could not logically be restricted only to the securities plaintiffs who happened to be the target of BNYM's motion. Plaintiffs' counsel informed Defendants' counsel of this precise position—in response to a direct question from Defendants' counsel as to same—on a meet-and-confer telephone call on October 31, 2013 leading up to Plaintiffs' motion for a protective order. Then, on November 1, 2013, Plaintiffs filed their motion for a protective order "striking any requests to third parties that, inconsistent with Judge Cott's Order, seek documents untethered to BNYM's FX practices and custodial services." Dkt. No. 304, at 3. Further, in their November 6 reply letter, Plaintiffs stated that BNYM "offers no rational reason why [the Order] should not equally apply across all of the cases in which BNYM's false statements are at issue." Dkt. No. 316 at 2. Then, on November 8, 2013, after receiving a list of search terms for a separate production of emails from two custodians in the Ohio Treasurer of State's office, BNYM's counsel asked, "With respect to those search terms we'd like to discuss whether your proposal is based on an interpretation of Judge Cott's Order that documents referencing 'best execution' or foreign exchange that do not specifically reference BNYM are irrelevant to the claims and defenses customer class case." *See* Exh. A (emails of Nov. 8 and 11, 2013, between Andrew C. Shen and Daniel E. Seltz). Counsel for the Ohio Funds confirmed that the search terms reflected Judge Cott's holdings. *Id.*

Consistent with the Order, Your Honor's affirmance of the Order, and Plaintiffs' representations subsequent to the Order, and because Plaintiffs' motion for a protective order was *sub judice* at the time of the production, Plaintiffs thus prepared their first-wave document production so that Defendants would receive (in the first instance) those documents that reflected the Court's holdings to date on the proper scope of discovery in this litigation, as well as documents that Plaintiffs had previously agreed to produce and that were not addressed by the Order.

To accomplish this, Plaintiffs took the documents they had gathered prior to the Order by using the 130+ search terms to which they had provisionally agreed in mid-September, and then applied (as a secondary filter) substantially the same search terms that the securities plaintiffs agreed to run on their document production, while adding several additional terms that would capture documents specific to Plaintiffs (such as documents concerning requests for proposals for investment management services,

1142734.4

Honorable Lewis A. Kaplan
November 27, 2013
Page 3

investment policies, and investment manager agreements).³  This secondary list of search terms included every conceivable variant of Defendants' current and previous names, so that all responsive documents concerning or relating in any way to Defendants would be provided.  *Id.*

After running this second set of search terms against the initial set of documents, the Ohio Funds together still produced more than 1.7 million pages of documents (which followed earlier productions of nearly 350,000 pages).  This represents more than 75% of all of the documents that were pulled in response to the initial 130+ search terms to which Plaintiffs had provisionally agreed prior to the Order and were otherwise responsive and not privileged.  SEPTA, meanwhile, produced more than 12,000 documents, which constituted approximately 70% of all of the documents initially pulled in response to the same 130+ search terms.

Contrary to Defendants' assertions, Plaintiffs did not "refus[e]" to produce documents that were not captured by Plaintiffs' secondary filter, but instead told Defendants that this remaining collection would be "set aside" ... "[u]ntil the parties receive contrary guidance from the Court in the form of rulings on Defendants' objections to the Order and/or Plaintiffs' motion for a protective order..."  Exhs. D & E to Dkt. No. 334, at 2.  Plaintiffs' transmittal letters both made clear the contingent nature of these productions, ending with an invitation to discuss the productions "pending the Court's resolution of the pending resolution and objections."  *Id.*  Following a meet-and-confer call on November 21, 2013, Plaintiffs' counsel again emphasized that the remaining documents are only "set aside, until we receive further guidance from the Court..."  Exh. G to Dkt. No. 334, at 1.  Plaintiffs represented that the documents can be produced "reasonably promptly if and when the Court provides different guidance as to those documents' relevance."  *Id.* at 2.  Both on the meet-and-confer call and in the November 21 letter, Plaintiffs' counsel stated that because the Court's ruling on the pending motion for a protective order may result in the production of all or some of the documents at issue, any motion concerning these documents would be premature, and that "the most sensible course is to await further guidance from the Court, which is forthcoming soon, on the pending motion for a protective order."  *Id.*

Contrary to Defendants' arguments—and the case law they cite in support—the dispute before the Court is not an example of Plaintiffs reneging on a previous agreement.  Plaintiffs have, in fact, run the search terms they agreed to run.  While the review of those documents for responsiveness was underway, the Court issued a decision that calls into serious doubt the relevance of a portion of the documents that the search terms hit upon—whether or not those documents are, in fact, even responsive to Defendants' requests—and Plaintiffs have reserved production while the Court resolves the parties' dispute regarding the relevance of such documents, and were fully transparent with Defendants about that decision.⁴  None of Defendants' citations are remotely on point or suggestive that Plaintiffs' approach is, in any way, bad faith or "sharp tactics."⁵  Defendants' motion accordingly should be denied.

---

³ *See* Exh. G to Dkt. No. 334.
⁴ BNYM's continuing assertion of improper "motive" on Plaintiffs' part to "preclude BNYM from discovering documents that will undermine Plaintiffs' claims" is a red herring.  The "examples" of such documents BNYM has previously submitted (*see, e.g.,* Dkt No. 307, Ex. 3) in support of this contention are irrelevant and, frankly, unhelpful to BNYM's defenses.
⁵ Indeed, some of the authorities Defendants cite highlight that Defendants should have waited until this Court first addressed the issues raised by Plaintiffs' Protective Order.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 341 (N.D. Ill. 2005) (**denying** motion to compel documents pending the court's decision regarding defendants' motion to dismiss).  In *Apple v. Samsung Elecs. Co.*, No. 11-cv-1846, 2012 WL 1511901, at *9 (N.D. Cal. Jan 27, 2012), the Court ordered the parties to further meet and confer on search terms and "reasonable delimiters" when Apple's search on agreed upon terms resulted in an "enormous volume" of irrelevant material.  Here, Plaintiffs have filtered potentially irrelevant documents out of the production pending the Court's imminent ruling on a fully submitted motion for a protective order.
1142734.4

Honorable Lewis A. Kaplan
November 27, 2013
Page 4

                              Respectfully submitted,

*/s/ Daniel P. Chiplock*                            */s/ Sharan Nirmul*
Daniel P. Chiplock                                    Sharan Nirmul
LIEFF CABRASER HEIMANN & BERNSTEIN,     KESSLER TOPAZ MELTZER & CHECK,
LLP                                                    LLP

cc:    All counsel (via email and ECF)

1142734.4