KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

December 2, 2013

*Via ECF and Overnight Mail*

Hon. Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Reply in Support of Motion to Compel*, Case Nos. 12-cv-3066, 12-cv-03470, 12-md-2335

Dear Judge Kaplan:

      Plaintiffs do not dispute BNYM's recitation of the facts or the applicable law.[1] For more than five months, the parties extensively negotiated the scope of Plaintiffs' document production obligations in response to BNYM's Rule 34 document requests. Ultimately, Plaintiffs committed to apply more than 130 specific search terms and to produce, by November 18, 2013, all responsive, non-privileged ESI that "hit" on those terms. Plaintiffs repeated this commitment to the Court in opposing BNYM's motion to compel the production of *other* responsive documents. Specifically, Plaintiffs argued that the additional production sought by BNYM would be cumulative and unduly burdensome because they had already "agreed to produce an extraordinary range of documents . . . such as foreign exchange transactions involving custodians other than Defendants" and that they had "agreed to search electronically stored information for more than 40 custodians, using negotiated search terms." DN 288, at 1-2. On this record, Judge Cott denied BNYM's motion to compel. Immediately after obtaining this favorable ruling, and despite representing to the Court that they would produce documents that "hit" upon the more than 130 agreed-upon search terms, Plaintiffs secretly applied an additional "filter" of seven or eight search terms that they unilaterally selected. The result was that all documents that did not *also* hit upon these previously undisclosed search terms – amounting to an astonishing 571,000 pages[2] – were withheld. Plaintiffs intentionally delayed disclosing this practice until *after* the deadlines for Phase I production and supplemental Phase II document requests had passed.[3]

---

[1] BNYM respectfully moves for leave to file this reply. *See* DN 2 at 4.

[2] Plaintiffs' argument (at 1) that they withheld only a "relatively small percentage of documents" is disingenuous. They admit (at 3) that they have withheld between *25%* to *30%* of the documents that would have been produced under the parties' agreement. Because Plaintiffs produced 1,712,000 pages on November 18, 2013, this amounts to roughly 571,000 pages. To put this number in context, SEPTA has produced only 65,000 pages total. Accordingly, Plaintiffs have withheld *nine times* the documents that SEPTA has actually produced. BNYM, by contrast, has produced more than 11 million pages, using substantially similar search terms to those Plaintiffs had agreed to run.

[3] Plaintiffs seek to defend their misconduct by asserting (at 2) that BNYM should not be surprised that they took this unilateral action, because they informed BNYM in early November that they believed the reasoning of Judge Cott's Order in the separate *securities* case should apply in the customer class case. They further argue that on November 8, 2013, they proposed to apply a narrower list of search terms against the ESI of the Ohio Treasurer of State's office. These arguments are both disingenuous and irrelevant. Plaintiffs could have easily made the straightforward disclosure that they intended to renege on their prior commitment as early as October 24, 2013. But, in an effort to

The motive for this stunning lack of candor is clear.  Plaintiffs have sought to:  (1) cause BNYM to litigate (and this Court to adjudicate) multiple prior motions under the false assumption that Plaintiffs intended to produce broad categories of documents by the Scheduling Order's November 18 deadline; (2) prevent BNYM from gaining access to relevant evidence that directly undermines the allegations in Plaintiffs' complaint;[4] and (3) prevent BNYM from serving alternative document requests by the Scheduling Order's November 18 deadline.

Plaintiffs fail to advance *any authority* that condones this conduct.  Nor could they:  the law is unambiguous that a party must abide by its discovery commitments.  *See* Mot. at 2-3 & n. 3.  That obligation carries special force where, as here, Plaintiffs have successfully argued that BNYM's motion to compel should be denied because Plaintiffs were already producing "an extraordinary range of documents" using specific "negotiated search terms."  *See*, *e.g.*, *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 185 (N.D. Ill. 2006) (discussing estoppel principles). Plaintiffs' refusal to honor their commitments to BNYM and the Court is not only sanctionable, *see In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 341 (N.D. Ill. 2005) (an "attorney's promise in open court to produce documents" can "be treated as the equivalent of an order for Rule 37(b) purposes"), but raises serious ethical concerns.  *See*, *e.g.*, Model Rules of Prof'l Conduct 3.3(a) (an attorney must correct material misstatements made to the Court).

In response, Plaintiffs make the disingenuous argument (at 3) that they did not really "reneg[e] on a previous agreement" because they "have, in fact, run the search terms they agreed to run."  This is semantic sleight-of-hand.  The parties' agreement was not that Plaintiffs would merely "run" the parties' agreed-upon search terms, but that they would *produce* the responsive documents captured by those terms by November 18, 2013.  Plaintiffs admit that they have not done so.  Plaintiffs' concession that they have already run the agreed-upon search terms merely proves that Plaintiffs have no credible burden objection and that they should be ordered to produce the agreed-upon documents immediately.  *See* Mot. 3 n.5.  Further, Plaintiffs assert that this motion is premature because of the motion for a protective order currently pending before Judge Cott.  That motion is irrelevant because it addresses the scope of BNYM's Rule 45 subpoenas to non-parties.  It has no application to Plaintiffs' own discovery obligations, where Plaintiffs have represented to BNYM and this Court that they would produce responsive documents that hit upon negotiated search terms and therefore have waived any objection to the production of these documents, where the production of the additional documents sought by BNYM imposes no burden, and where this Court's prior orders specifically contemplate broad discovery regarding industry FX practices and the term "best execution" – the very evidence that Plaintiffs are seeking to conceal, *see* DN 307, at 1 n.2.

Plaintiffs must be held to their commitments.  After BNYM and the Court have relied on Plaintiffs' representations that they would produce these documents, and after Plaintiffs have reaped the benefit of that commitment (including on BNYM's motion to compel and by inducing BNYM to make an enormous production that included many of the categories of documents that Plaintiffs then withheld), Plaintiffs cannot lawfully withhold them.  This is the second time that BNYM has been compelled to seek judicial relief following Plaintiffs' blatant disregard of their discovery obligations.  BNYM's motion should be granted in its entirety.[5]

---

achieve an improper litigation advantage, they did not.  Moreover, BNYM has never agreed to the narrow list of search terms for the Ohio Treasurer's ESI, and the parties continue to meet and confer on that issue.

[4] The categories of documents that Plaintiffs have improperly withheld, and their relevance to the claims and defenses in the customer class cases, is set forth in DN 334, Exh. A.  Plaintiffs do not dispute that they have withheld these categories of documents, nor do they dispute the documents' central relevance.

[5] Argument on Plaintiffs' motion for a protective order has been set for December 12, 2013.  DN 339.  In the event that this motion is assigned to Judge Cott, BNYM respectfully requests that oral argument be heard at the same time.

Dated:  December 2, 2013

Respectfully submitted,

THE BANK OF NEW YORK MELLON CORPORATION

THE BANK OF NEW YORK MELLON

THE BANK OF NEW YORK

MELLON BANK, N.A.

/s/ Andrew C. Shen
---
Reid M. Figel (RF-8663)
Rebecca A. Beynon (*pro hac vice*)
David L. Schwarz (*pro hac vice*)
Derek T. Ho (DH-0104)
Gregory G. Rapawy (*pro hac vice*)
Andrew C. Shen (AS-7963)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999
rfigel@khhte.com
rbeynon@khhte.com
dschwarz@khhte.com
dho@khhte.com
grapawy@khhte.com
ashen@khhte.com

*Counsel for The Bank of New York Mellon Corporation, The Bank of New York Mellon, The Bank of New York, and Mellon Bank, N.A.*