UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

BANK OF NEW YORK MELLON CORP.
FOREX TRANSACTIONS LITIGATION

                              MASTER DOCKET
                              12 MD 2335 (LAK)

This document relates to:

*Southeastern Pennsylvania Transp. Auth. v. The Bank of New York Mellon Corp., et al.*, 12 Civ. 3066 (LAK),

*International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund v. The Bank of New York Mellon Corp., et al.,* 12 Civ. 3067 (LAK),

*Ohio Police & Fire Pension Fund, et al. v. The Bank of New York Mellon Corp., et al.*, 12 Civ. 3470 (LAK).
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

      Appearances:

           Joseph H. Meltzer
           Sharan Nirmul
           Shannon O. Braden
           Sekou Campbell
           KESSLER TOPAZ MELTZER & CHECK, LLP

           Elizabeth J. Cabraser
           Steven E. Fineman
           Daniel P. Chiplock
           Daniel E. Seltz
           Michael J. Miarmi
           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

           *Attorneys for Plaintiffs*

           Brian K. Murphy
           MURRAY MURPHY MOUL & BASIL, LLP

           *Attorney for Plaintiff Ohio Police & Fire Pension Fund*

Michael P. Thornton
Michael A. Lesser
THORNTON & NAUMES, LLP

Michael P. Lehmann
Christopher L. Lebsock
HAUSFELD, LLP

Gregory S. Hach
Michael A. Rose
Frank R. Schirripa
HACH ROSE SCHIRRIPA & CHEVERIE, LLP

*Attorneys Plaintiff International Union of Operating Engineers*

Bradley E. Beckworth
Brad Seidel
Jeffrey J. Angelovich
NIX PATTERSON & ROACH, LLP

*Attorneys for Plaintiff Southeastern Pennsylvania Transportation Authority*

Reid M. Figel
Rebecca A. Beynon
David L. Schwarz
Derek T. Ho
Gregory G. Rapawy
Andrew C. Shen
KELLOG HUBER HANSEN TODD EVANS & FIGEL, PLLC

*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

The plaintiffs in these three actions all were or are customers of the Bank of New York Mellon ("BNYM")[1] that contracted with BNYM to execute certain foreign exchange

---

[1] "BNYM" refers collectively to the Bank of New York Mellon and its various predecessors and affiliates.

2

transactions on their behalf. They now allege that BNYM is liable for breaches of fiduciary duties, contract, and the implied covenant of good faith and fair dealing, conversion, unjust enrichment, and certain violations of state business law for assigning fictitious foreign currency exchange rates to the plaintiffs' purchases and sales of foreign securities in violation of contractual guarantees. The Department of Justice and several other groups of private plaintiffs also have sued BNYM for alleged damages stemming from its foreign exchange practices. In response, BNYM counterclaimed for indemnification from the Southeastern Pennsylvania Transportation Authority ("SEPTA"), the International Union of Operating Engineers ("IUOE Local 39") and its Trustees,[2] and, conditionally, from the unnamed putative class members in all three cases.

The plaintiffs now move to dismiss those counterclaims, arguing that (1) they are untimely; (2) the counterclaims against the IUOE Local 39 and its Trustees were waived; (3) they fail to state a plausible claim; and (4) conditional counterclaims against absent class members are improper.

*Background*

SEPTA filed its original complaint against BNYM in March 2011, IUOE Local 39 in July 2011, and Ohio Police and Fire in April 2012. BNYM answered IUOE Local 39's amended complaint, but never answered in the other two actions. After the cases were transferred to this district as part of the multi-district litigation against BNYM, the Court granted the plaintiffs leave

---

[2]     The claim against the Trustees is a third-party claim.

3

to file a Master Customer Class Complaint.[3]  The Court subsequently entered a scheduling order requiring that any answers to complaints be filed by September 15, 2013.[4]  It was silent on the topic of counterclaims.

On September 15, 2013 BNYM answered the Master Customer Class Complaint and included its counterclaims for indemnification.  It asserts that the counterclaims arise under the Master Trust Agreement ("MTA"), pursuant to which it provided custody services to SEPTA, and the Global Custody Agreement ("GCA"), pursuant to which it provided custody services to IUOE Local 39.  BNYM is seeking, at minimum, indemnification for costs and attorneys fees incurred in defending against these actions and, at broadest, indemnification also for costs, attorneys fees, and any liability assessed against it in the related actions, to the extent that those actions arise out of the MTA and GCA.

The MTA provides that SEPTA will compensate BNYM for, *inter alia*, expenses and "reasonable attorneys' fees, that may be incurred by, imposed upon, or asserted against [BNYM] by reason of any claim, regulatory proceeding, or litigation arising from any act done or omitted to be done by any individual or person with respect to the Participating Plans or Master Trust Fund, excepting only any and all cost and expense arising solely from [BNYM's] negligence, bad faith, or breach of fiduciary duty."[5]

Similarly, the GCA provides that IUOE Local 39 "will be liable for and will indemnify

---

[3] May 17, 2013 Hr'g Tr. [DI 246] at 14:11-16:2, 22:7-10; Master Customer Class Compl. [DI 262].

[4] Scheduling Order [DI 273] at 2.

[5] Meltzer Decl. [DI 296], Ex. A § 10.1.

4

and keep fully indemnified . . . [BNYM] and its nominees and hold them harmless from and against, any and all Losses howsoever arising from or in connection with this Agreement or the performance of their duties hereunder (including disputes between the parties or enforcement of this Agreement), provided, however, that nothing contained herein shall require that [BNYM] or its nominees be indemnified for their respective fraud, negligence, or willful misconduct . . . ."[6]

The parties agree, for the purposes of this motion, that Pennsylvania law controls the claim for indemnification against SEPTA under the MTA and California law controls the claim for indemnification against IUOE Local 39 under the GCA.

*Discussion*

I.  *Timeliness*

The plaintiffs argue that the counterclaims are not timely and that BNYM in effect is seeking to modify the scheduling order because the scheduling order did not address the time by which counterclaims must be filed.[7]

Rule 13(a) directs that "[a] pleading must state as a counterclaim any [compulsory counter] claim that–at the time of its service–the pleader has against an opposing party . . . ." Rule 13(b) similarly permits the assertion of permissive counterclaims. BNYM therefore was permitted to file counterclaims as part of its first pleadings responsive to the complaints. Its first responsive pleading in the SEPTA and Ohio Police and Fire actions was its answer to the Master Customer Class Complaint, which was filed on September 15, 2013 pursuant to the scheduling order. That

---

[6]   *Id.* Ex. B § 6(b).

[7]   *See generally* DI 273.

5

answer included the counterclaims at issue here.  There is nothing in the scheduling order that suggests an intent to override Rule 13 to bar the filing of counterclaims.  Silence in the scheduling order does not so imply.[8]

II.     *Waiver*

The plaintiffs argue also that BNYM has waived its counterclaims against IUOE Local 39 and its Trustees because (a) they are compulsory counterclaims and (b) BNYM did not raise them in its first responsive pleading, which was its answer to IUOE Local 39's amended complaint.[9]  BNYM cannot, the plaintiffs claim, file counterclaims along with a second or amended answer.

BNYM argues that it is entitled to file counterclaims with its amended answer for two reasons.  First, BNYM was entitled to plead new counterclaims because the Master Customer Class Complaint expanded the scope of IUOE Local 39's claims against BNYM.  Second, leave to amend in any case would be warranted under Rule 15(a)(2).

"[W]hen a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff. . . .  The obvious corollary is that if an amended complaint does not change the theory

---

[8] *Cf. Roman Y Gordillo, S.C. v. Bank of New York Mellon Corp.*, 12 Civ. 0212 (DF), 2014 WL 1224361, at *7 (S.D.N.Y. Mar. 20, 2014) ("[W]hen a scheduling order does not provide a deadline by which the parties must amend their pleadings, Rule 16 may still apply 'where the record contains some indication that the court and the parties understood that the pleadings would not be further amended.'" (citation omitted)).  The plaintiffs do not contend that the record contains any such indication regarding the time to file counterclaims.

[9] Answer [12 Civ. 3067 DI 94].

6

or scope of the case, a [defendant] must seek leave of court pursuant to Rule 15(a) before it can amend its answer to assert a counterclaim."[10] IUOE Local 39 asserts several claims against BNYM in the Master Customer Class Complaint that were not in its amended complaint. For example, it now alleges claims for unjust enrichment[11] and conversion.[12]

The plaintiffs argue that these changes did not expand the scope of IUOE Local 39's claims because the Master Customer Class Complaint merely "aggregates the claims of the three actions . . . thereby adding any causes of action that were asserted in the SEPTA Action and Ohio Action to the claims that the Local 39 Fund brought in California."[13] The plaintiffs suggest no reason why the fact that other plaintiffs already had brought certain claims that IUOE Local 39 now adopts as its own should change the analysis. The scope of *IUOE Local 39's* complaint against BNYM has changed, and BNYM thus was entitled to amend its answer to that plaintiff's complaint and to add new counterclaims. In any case, leave to amend would be granted.

---

10

    *Pereira v. Cogan*, 00 Civ. 619 (RWS), 2002 WL 1822928, at *3 (S.D.N.Y. Aug. 7, 2002) (quoting *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 832 (N.D. Iowa 1997), *aff'd* 2000 WL 84400 (8th Cir. Jan. 21, 2000)); *see also E.E.O.C. v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 226-27 (S.D.N.Y. 2002) (collecting cases).

    There is some support for a rule requiring that amendments to an answer relate directly to the amendments to the complaint, *see Weschler v. Hunt Health Sys. Ltd.*, 186 F. Supp. 2d 402, 415-16 (S.D.N.Y. 2002), but this appears to be the minority view among courts in this district.

11

    Master Customer Class Complaint [DI 262] at 81.

12

    *Id.* at 80; *see also* BNYM Br. [DI 300], Att. A (listing the substantive additions to the Master Customer Class Complaint).

13

    Reply Br. [DI 324] at 8.

7

III.     *Failure to State a Claim*

The plaintiffs make several substantive arguments as to why BNYM's counterclaims must fail as a matter of law. None of them is persuasive.

First, they argue that BNYM is alleged to have caused the very loss for which it seeks indemnification by breaching its custodial agreements, including by acting, *inter alia*, negligently, fraudulently, in bad faith, or in breach of fiduciary duty and that BNYM therefore is not entitled to indemnification under the MTA or GCA. That BNYM is alleged to have committed certain acts is immaterial. Whether it actually did commit those acts, which it disputes, is not appropriate for determination on a motion to dismiss.

Second, the plaintiffs assert that under the controlling states' laws – California, in the case of the agreement with IUOE Local 39 and Pennsylvania in the case of the agreement with SEPTA – the indemnification provisions are not adequately explicit to allow for fee shifting between the parties to the contract. The Court disagrees.

Under California law, an award of attorneys' fees in an action between the parties to a contract is permissible as long as the contract explicitly so provides.[14] The GCA is perfectly clear in providing for such an award. It states that IUOE Local 39 "will be liable for and will indemnify and keep fully indemnified . . . [BNYM] and its nominees and hold them harmless from and against, any and all Losses howsoever arising from or in connection with this Agreement or the performance of their duties hereunder (*including disputes between the parties or enforcement of this*

---

[14] *See Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 555, 21 Cal. Rptr. 3d 322, 328 (2004) ("Here, buyer Dream Theater, LLC agreed to indemnify seller Dream Theater, Inc. against not only third party claims but also any breach of buyer's obligations to seller . . . ."); *see also Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1024, 124 Cal. Rptr. 2d 105, 113 (2011).

8

*Agreement*). . . ." The term "losses" is defined as "any and all claims, losses, liabilities, damages, costs, expenses and judgments (including reasonable attorneys' fees and expenses) sustained by either party hereto."[15] The indemnification provision explicitly includes attorneys' fees and extends to "disputes between the parties." The plaintiffs' argument that this language is insufficiently explicit lacks merit.

The plaintiffs argue also that, under Pennsylvania law, a contract providing for indemnification in suits between the parties to that contract must be "unmistakably clear" and that the MTA does not meet that threshold. This statement of the law is not entirely accurate. "Pennsylvania law allows for the recovery of attorneys' fees 'from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties.'"[16] Broadly phrased indemnification clauses can satisfy this test. For example, the Eastern District of Pennsylvania, apparently applying Pennsylvania law, held that a broadly worded clause providing for indemnification applied to a suit between the parties to the contract, reasoning that "[i]f plaintiffs wanted to limit indemnification to third party claims only, it was incumbent upon them to include such a provision in Article 4."[17] The MTA contains broad language that, plainly read, requires

---

[15] Meltzer Decl. [DI 296], Ex. B §§ 1(o), 6(b) (emphasis added).

[16] *Waynesborough Country Club of Chester Cnty. v. Diedrich Niles Bolton Architects, Inc.*, 07 Civ. 155 (GEP), 2008 WL 4916029, at *3, *5 (E.D. Pa. Nov. 12, 2008) (*quoting Fidelity-Philadelphia Trust Co. v. Philadelphia Transportation Co.*, 173 A.2d 109, 113 (Pa. 1961)); *see also id.* ("Therefore, in terms of allocating attorneys' fees and costs, contracting parties may structure their agreement as they choose, and the Court should enforce such unambiguous contracts as they are written.").

[17] *STS Holdings, Inc. v. CDI Corp.*, 99 Civ. 3480 (CRW), 2004 WL 739869, at *1-*3 (E.D. Pa. Mar. 19, 2004). The court did not state explicitly which law controlled the interpretation of the contract at issue. It suggests, however, that Pennsylvania law may have controlled, or at least that its decision was consistent with Pennsylvania law. It noted that the plaintiffs

9

SEPTA to compensate BNYM for reasonable attorneys' fees that are "incurred by" it "by reason of . . . litigation arising from any act done or omitted to be done . . . with respect to" SEPTA's funds. This litigation is claimed to have arisen as a result of acts done or omitted to be done with respect to the SEPTA funds. The provision clearly applies.[18]

The plaintiffs cite *Jacobs Constructors, Inc. v. NPS Energy Systems, Inc*,[19] in support of their argument that the MTA is not adequately explicit. That case arose under a unique set of facts that render it distinguishable here. It involved a contractual indemnity by NPS Energy Systems, a sub-contractor, to Jacobs, a contractor, for work done at a refinery. After a deadly accident at the refinery, the refinery owner sued Jacobs in state court for reimbursement of certain costs. Jacobs then sued NPS Energy Systems in federal court, seeking defense and indemnification in the state court action under their contract. The court analogized the case to one in which an indemnitee seeks indemnification for its own negligence. In those circumstances, the intent to indemnify must be expressed in "clear and unequivocal" terms because it would be "unusual and extraordinary" to presume that the "indemnitor intended to assume the responsibility" for the

---

urged the court to ignore the law of other circuits and follow Pennsylvania state law, but went on to conclude that "[t]here is nothing inconsistent between [Pennsylvania state law] and the [Fourth, Eighth, and Ninth Circuit] decisions cited above" allowing broadly worded indemnification provisions to apply between the parties to the contract. *Id.* at *2.

[18] The plaintiffs make much of the fact that the quoted language appears in Section 10.1, labeled "Compensation and Expenses of the Master Trustee" rather than in Section 3.4, labeled "Indemnity." They assert that BNYM "pivot[s] and instead argue[s] that the Court should import MTA § 10.1, titled 'Compensation and Expenses of Master Trustee,' into MTA § 3.4's clearly titled 'Indemnification' clause." DI 324 at 6. They do not suggest any reason that the contract's headings rather than its substance should control the Court's interpretation.

[19] 264 F.3d 365 (3d Cir. 2001) (applying Pennsylvania law).

10

indemnitee's negligence "unless the contract puts it beyond doubt by express stipulation."[20]  It held that the facts in *Jacobs* merited application of the same rule.  Any other result would risk reading into contract's an intent to indemnify "regardless of the fault of the indemnitor" akin to allowing "indemnification for one's own negligence."[21]

The facts in *Jacobs* are nowhere near the facts of this case – here, the indemnification provisions would not apply if BNYM were found to have acted negligently or otherwise been at fault.  In the present posture of this case, there are no prevailing policy reasons akin to those in *Jacobs* to construe the MTA so narrowly and effectively ignore the plain meaning of the contract.[22]

IV.     *Conditional Counterclaims Against Unnamed Putative Class Members*

Finally, the plaintiffs argue that BNYM's conditional counterclaims against non-party putative class members are premature.

Courts faced with the question of whether to allow conditional counterclaims of this

---

[20] *Id.* at 371-72 (quoting *Perry v. Payne*, 217 Pa. 242, 262, 66 A. 553, 557 (1907)).

[21] *Id.* at 372.

[22] The plaintiffs cite also *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 08 Civ. 415 (TFM), 2010 WL 4672357 (W.D. Pa. Nov. 9, 2010).  This case is inapposite.  It addresses how broadly or narrowly to construe the term "prevail" in a fee shifting provision in an employment contract and expresses concern that such a provision that fails to limit fee awards to "reasonable" attorneys' fees might be subject to abuse.  *Id.* at *8-*9.

Plaintiffs in their reply brief make several arguments about the time at which a claim for indemnification accrues under state law.  "[I]f the governing law recognizes a substantive claim, its accrual and the method of its presentation are properly regarded as procedural for Erie purposes."  3 Moore's Federal Practice 14-32 (3d ed. 2014).  Courts in this district generally permit counterclaims for indemnification to be brought under Rule 13 before a determination of liability has been made in the underlying matter.  *See, e.g.*, *Index Fund, Inc. v. Hagopian*, 91 F.R.D. 599, 605 (S.D.N.Y. 1981); *Atlantic Aviation Corp. v. Costas' Estate*, 332 F. Supp. 1002, 1006-07 (E.D.N.Y. 1971).

nature to proceed have not acted uniformly. Some have held that non-party putative class members are not "opposing parties" for the purposes of Rule 13 and, accordingly, cannot be subject to counterclaims.[23] Others have allowed such claims to go forward based, at least in part, on case management concerns.[24]

This Court agrees with those that have held that non-party putative class members are not properly considered "opposing parties" under Rule 13. From a practical perspective, it is entirely speculative which putative class members will opt out of the classes, whether the contracts of those who do not opt out will contain indemnification clauses, or whether the defendants will have any plausible claim for indemnification under any such clauses.

*Conclusion*

For the foregoing reasons, the plaintiffs' motion to dismiss BNYM's counterclaims [12 MD 2335 DI 294] is granted to the extent that BNYM's conditional counterclaims against non-party putative class members are dismissed. It is denied in all other respects.

SO ORDERED.

Dated:     July 9, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[23]   *See, e.g., In re Sugar Antitrust Litigation*, 22 Fed. Rules Serv. 2d 634 (E.D. Pa.1976); *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485 (S.D.N.Y.1973); *Weit v. Continental Illinois Nat'l Bank & Trust Co.*, 60 F.R.D. 5 (N.D. Ill. 1973).

[24]   *See Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 75 F.R.D. 40, 43 (S.D.N.Y. 1977).