# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BANK OF NEW YORK MELLON CORP. FOREX TRANSACTIONS LITIGATION | No. 12-MD-2335 (LAK) (JLC) |
| THIS DOCUMENT RELATES TO: | |
| *Southeastern Pennsylvania Transportation Authority v. The Bank of New York Mellon Corporation, et al.* | No. 12-CV-3066 (LAK) (JLC) |
| *International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund v. The Bank of New York Mellon Corporation, et al.* | No. 12-CV-3067 (LAK) (JLC) |
| *Ohio Police & Fire Pension Fund, et al. v. The Bank of New York Mellon Corporation, et al.* | No. 12-CV-3470 (LAK) (JLC) |
| *Carver, et al. v. The Bank of New York Mellon, et al.* | No. 12-CV-9248 (LAK) (JLC) |
| *Fletcher v. The Bank of New York Mellon, et al.* | No. 14-CV-5496 (LAK) (JLC) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR (1) PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS; (2) APPOINTMENT OF LEAD PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES, AND APPOINTMENT OF LEAD SETTLEMENT COUNSEL AS CLASS COUNSEL; (3) APPROVAL OF THE PROPOSED FORM AND MANNER OF NOTICE; AND (4) SCHEDULING OF A FINAL APPROVAL HEARING**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND OF THE LITIGATION AND SUMMARY OF THE SETTLEMENT
TERMS .................................................................................................... 3

    A.    The Parties Actively Litigated These Cases for Nearly Four Years. ......... 3

    B.    The Settlement Affords Settlement Class Members Significant
Monetary Relief in Exchange for Releasing Their Claims. ...................... 9

ARGUMENT ............................................................................................ 10

I.    The Proposed Settlement Class Should Be Provisionally Certified. ................... 10

    A.    A Sufficient Basis Exists to Find that Rule 23(a)'s Prerequisites
Are Satisfied at This Stage. .................................................................. 12

    B.    A Sufficient Basis Exists to Find that Rule 23(b)(3)'s Prerequisites
Are Satisfied at This Stage. .................................................................. 21

II.    The Court Should Approve The Proposed Form And Manner Of Notice
To The Settlement Class. .................................................................. 25

III.    Proposed Settlement Schedule .......................................................... 28

CONCLUSION .......................................................................................... 29

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231 (1997)................................................................ 11, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)......................................................................... 12, 16, 21, 22

*Aspinall v. Philip Morris Cos.*,
  813 N.E.2d 476 (Mass. 2004) ...................................................................................... 22

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  269 F.R.D. 340 (S.D.N.Y. 2010) ................................................................................. 23

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014)........................ 22

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623 (PAC), 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009)............ 27

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)................................................................................................ 17

*Davis v. J.P. Morgan Chase & Co.*,
  775 F. Supp. 2d 601 (W.D.N.Y. 2011) ....................................................................... 24

*DeLeon v. Wells Fargo Bank, N.A.*,
  No. 12 Civ. 4494 (RA), 2015 U.S. Dist. LEXIS 27111 (S.D.N.Y. Jan. 12, 2015).................. 27

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005), *aff'd in relevant part sub nom.*,
  *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ..................................... 24

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ......................................................................... 13, 21

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147, 102 S. Ct. 2364 (1982)........................................................................ 18

*Glatt v. Fox Searchlight Pictures Inc.*,
  293 F.R.D. 516 (S.D.N.Y. 2013) ............................................................................... 12

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
  748 F.2d 729 (2d Cir. 1984) ....................................................................................... 17

*Hughes v. Gentronics Wang LLC*,
  No. 07-CV-10356 (LAK)(THK), 2009 U.S. Dist. LEXIS 101032
  (S.D.N.Y. Oct. 21, 2009) ........................................................................................... 12

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ................................................................ 10

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
921 F. Supp. 2d 56 (S.D.N.Y. 2013) ............................................... 7, 17

*In re Credit Default Swaps Antitrust Litig.*,
No. 13md2476 (DLC), 2014 U.S. Dist. LEXIS 123784 (S.D.N.Y. Sept. 4, 2014) ................ 17

*In re Currency Conversion Fee Antitrust Litig.*,
MDL No. 1409, 2006 U.S. Dist. LEXIS 81441 (S.D.N.Y. Nov. 8, 2006) ............................. 27

*In re Elec. Books Antitrust Litig.*,
No. 11 MD 2293 (DLC), 2014 U.S. Dist. LEXIS 42537 (S.D.N.Y. Mar. 28, 2014) .............. 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ............................................................ 18, 19

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ................................................... *passim*

*In re Lehman Bros. Sec. & ERISA Litig.*,
No. 08 Civ. 5523 (LAK), 2013 U.S. Dist. LEXIS 13999 (S.D.N.Y. Jan. 23, 2013) ............... 22

*In re Lupron® Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ......................................................... 24

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
270 F.R.D. 45 (D. Mass. 2010) ......................................................... 11

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................... 17

*In re Mex. Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) ........................................................... 24

*In re Platinum & Palladium Commodities Litig.*,
No. 10cv3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ............................. 27

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
MDL No. 2328 Section: R(2), 2014 U.S. Dist. LEXIS 178989
(E.D. La. Dec. 31, 2014) ................................................................. 24

*In re Scotts EZ Seed Litig.*,
No. 12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 91164 (S.D.N.Y. Jan. 26, 2015) ................... 22

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009) ................................................................. 22

# TABLE OF AUTHORITIES
## (continued)

Page

*In re US Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013), *cert. denied sub nom.*,
  *US Foods, Inc. v. Catholic Healthcare W.*, 134 S. Ct. 1938 (2014) ........................................ 17

*Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39*
*Pension Trust Fund v. Bank of N.Y. Mellon Corp.*,
  No. C 11-03620 WHA, 2012 U.S. Dist. LEXIS 18281 (N.D. Cal. Feb. 14, 2012) .................. 5

*Jones v. Conocophillips Co.*,
  130 Cal. Rptr. 3d 571 (Cal. Ct. App. 2011) ............................................................................ 17

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ............................................................................................... 17

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .................................................................................................... 13

*Meredith Corp. v. SESAC, LLC*,
  No. 09 Civ. 9177 (PAE), 2015 U.S. Dist. LEXIS 20055 (S.D.N.Y. Feb. 19, 2015) .............. 11

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004) ................................................................................................. 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................................................. 26

*Padilla v. Maersk Line, Ltd.*,
  271 F.R.D. 444 (S.D.N.Y. 2010) ............................................................................................ 13

*Passatempo v. McMenimen*,
  960 N.E.2d 275 (Mass. 2012) ................................................................................................. 17

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) .................................................................................................... 18

*Rodriguez v. It's Just Lunch, Int'l*,
  300 F.R.D. 125 (S.D.N.Y. 2014) ...................................................................................... 16, 17

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970 (2012) ..................................... 22

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) (en banc) ................................................................................... 24

*Tsereteli v. Residential Asset Securitization Trust*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ............................................................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .................................................................................................. 13, 18, 22

## TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

28 U.S.C. § 1407 ................................................................................................. 5

Class Action Fairness Act, 28 U.S.C. § 1715(b) ............................................... 29

ERISA, 29 U.S.C. § 1104 .................................................................................. 6

    29 U.S.C. § 1106(a) ..................................................................................... 6

    29 U.S.C. § 1106(a)(1) ................................................................................ 6

    29 U.S.C. § 1106(b) ..................................................................................... 6

    29 U.S.C. § 1132(a)(3) ................................................................................ 6

N.Y. Gen. Bus. Law § 349 ........................................................................... 4, 7, 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 6

Fed. R. Civ. P. 23(b)(3) .......................................................................... 11, 18, 23

Fed. R. Civ. P. 23(b)(3)(D) .............................................................................. 23

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 26

Fed. R. Civ. P. 23(e)(1) ..................................................................................... 25

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................... 19

Fed. R. Civ. P. 23(h) ......................................................................................... 25

**Other Authorities**

Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010), available at
    http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ........................ 26

## PRELIMINARY STATEMENT

Lead Plaintiffs Ohio Police & Fire Pension Fund ("OP&F"), School Employees

Retirement System of Ohio ("SERS"), Southeastern Pennsylvania Transportation Authority

("SEPTA"), International Union of Operating Engineers, Stationary Engineers Local 39 Pension

Trust Fund ("IUOE Local 39"), Joseph F. Deguglielmo (in his capacity as a participant in and

representative of the Kodak Retirement Income Plan), and Landol D. Fletcher (in his capacity as

a participant in and representative of the Central States, Southeast and Southwest Areas Pension

Plan) (collectively, "Lead Plaintiffs") are pleased to bring this proposed settlement (the

"Settlement") before the Court.[1]  They respectfully request that the Court allow the Settlement to

advance past this preliminary stage so that notice can issue to Settlement Class Members and

Lead Plaintiffs can make a full presentation to the Court to demonstrate that the Settlement is

fair, reasonable, and adequate in accordance with Rule 23 of the Federal Rules of Civil

Procedure.

The Settlement is the culmination of nearly four years of hotly contested litigation, during

which Lead Plaintiffs expended significant efforts to develop their allegations, overcome

motions to dismiss, manage a massive discovery process—including collaborating with

government entities—and coordinate with experts in connection with their anticipated motions

for class certification.  Among other things, during discovery Lead Plaintiffs produced or

reviewed nearly 25 million pages of documents; took, defended, or otherwise participated in 128

depositions in locations across the country and abroad; briefed numerous discovery motions; and

exchanged 10 expert reports.  On the cusp of briefing on class certification, the parties engaged

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Stipulation and Agreement of Settlement ("Stipulation") attached as Exhibit 1 to the accompanying Declaration of Daniel P. Chiplock ("Chiplock Decl."). Plaintiffs are submitting the Chiplock Declaration, as well as the Declarations of Sharan Nirmul ("Nirmul Decl.") and J. Brian McTigue ("McTigue Decl."), concurrently with their motion.

in an intensive, three-day mediation before former United States District Judge Layn Phillips. The resulting Settlement provides for a $335 million payment by or on behalf of Defendants to the Settlement Class (as defined in the Stipulation),[2] as well as the distribution of an additional $155 million to Settlement Class Members in connection with the pending settlement of the New York Attorney General's action against BNYM ("NYAG Settlement").[3]  Settlement Class Members thus stand to receive a recovery amounting to approximately 35% of their maximum potential recovery at trial, as calculated by Plaintiffs' damages expert during the Litigation.  This result appropriately balances Lead Plaintiffs' objective of securing the highest possible recovery for Settlement Class Members while accounting for the risk that they could receive nothing if Lead Plaintiffs were to fail at the class-certification or summary-judgment stages, or to lose at trial.

Additionally, Rule 23's prerequisites are satisfied for purposes of the Settlement.  Lead Plaintiffs can demonstrate numerosity, commonality, typicality, predominance, and superiority. Lead Plaintiffs and Lead Settlement Counsel—Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"), Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), and McTigue Law LLP ("McTigue Law")—also have demonstrated their commitment to protecting absent class members' interests throughout the Litigation, rendering them adequate representatives of the

---

[2] As defined in the Stipulation, "Defendants" consists of The Bank of New York Mellon Corporation, The Bank of New York Mellon, The Bank of New York Company, Inc., The Bank of New York, Mellon Bank N.A., The Bank of New York Mellon Trust Company, N.A. (formerly known as the Bank of New York Trust Company, N.A.), and BNY Mellon, N.A. (collectively, "BNYM" or the "Bank"), as well as unnamed individuals designated as Does 1-20 in the second amended class-action complaint in *Carver v. The Bank of New York Mellon*, No. 1:12-cv-09248-LAK (S.D.N.Y.) ("Carver Action"), and the amended class-action complaint in *Fletcher v. The Bank of New York Mellon*, No. 1:14-cv-05496-LAK (S.D.N.Y.) ("Fletcher Action").  The Stipulation was executed on behalf of Lead Plaintiffs and plaintiffs Deborah Jean Kenny, Edward C. Day, Lisa Parker, and Frances Greenwell-Harrell (from the Carver Action).  Those plaintiffs and Lead Plaintiffs are referred to collectively as "Plaintiffs."

[3] The Stipulation also states that, under the settlement between the U.S. Department of Labor ("DoL") and BNYM ("DoL Settlement"), the Bank will pay an additional $14 million for the benefit of ERISA plans.  That settlement is not before the Court.

Settlement Class.  Further, the form and manner of notice proposed by Lead Plaintiffs (and discussed below) comport with Rule 23 and due process.

Lead Plaintiffs therefore respectfully request that the Court enter an order, substantially in the form attached as Exhibit A to the Stipulation ("Notice Order"), (1) provisionally certifying the Settlement Class; (2) appointing Lead Plaintiffs as Settlement Class representatives, and appointing Lead Settlement Counsel as Class Counsel; (3) approving the proposed form and manner of notice ("Notice") to the Settlement Class, substantially in the form attached as Exhibit A-1 to the Stipulation; and (4) scheduling a hearing to determine whether the Settlement is fair, reasonable, and adequate ("Final Approval Hearing").

## BACKGROUND OF THE LITIGATION AND SUMMARY OF THE SETTLEMENT TERMS

### A.    The Parties Actively Litigated These Cases for Nearly Four Years.

Lead Plaintiffs allege that BNYM priced FX transactions executed for custodial clients through its standing-instruction ("SI") program in a deceptive and unfair manner, and in so doing breached the Bank's contractual and fiduciary obligations to those clients.  The Litigation began when, in the wake of disclosures regarding whistleblower-aided investigations by state attorneys general into BNYM's practices, SEPTA filed a putative class action against The Bank of New York Mellon Corporation in the Eastern District of Pennsylvania on March 7, 2011 ("SEPTA Action"),[4] asserting claims for breach of fiduciary duty and unjust enrichment.  After filing an amended complaint, SEPTA filed a second amended complaint on June 1, 2011, adding Mellon Bank N.A. and The Bank of New York Mellon as defendants as well as claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

---

[4] *Southeastern Pennsylvania Transportation Authority v. The Bank of New York Mellon Corp.*, No. 2:11-cv-01628-TON (E.D. Pa.).

1221791.4

On July 22, 2011, Plaintiff IUOE Local 39 filed a putative class action in the Northern District of California ("IUOE Local 39 Action"),[5] asserting claims for violation of Sections 17200 and 17500, *et seq.* of the California Business and Professions Code ("UCL"); breach of contract; breach of the implied covenant of good faith and fair dealing; and violation of Section 349, *et seq.* of New York's General Business Law ("N.Y. GBL § 349").  On January 5, 2012, IUOE Local 39 filed an amended complaint, alleging, among other things, that by assigning customer clients rates for SI FX transactions that were near the high of the daily interbank range, for purchases, and near the low end, for sales, BNYM failed to accord those clients terms "not less favorable . . . than terms offered by [the Bank] to unrelated parties in a comparable arm's length FX Transaction," which the operative custodial agreements mandated.[6]

In a Stipulation and Order of Partial Settlement and Dismissal entered in the related action by the U.S. Department of Justice[7] on January 17, 2012 ("DoJ Stipulation"),[8] BNYM agreed to disclose on its website, among other things, that:

> unless BNY Mellon and its Standing Instruction Service client agree to a different pricing arrangement, BNY Mellon assigns prices to Standing Instruction Service transactions that are at or near the high end of the range of prices reported in the interbank market for currency purchases for the relevant pricing cycle, and at or near the low end of [the] range of prices reported in the interbank market for currency sales for the relevant pricing cycle.

---

[5] *International Union of Operating Engineers, Local 39 Pension Trust Fund v. The Bank of New York Corp., et al.*, No. 3:11-cv-03620 (WHA) (N.D. Cal.).

[6] *See, e.g.*, Am. Compl. in IUOE Local 39 Action (Dkt. No. 1 in 12-CV-03067-LAK), ¶¶ 22-25 & Ex. B (Foreign Exchange Policies and Procedures for ERISA Plans).

[7] *United States v. The Bank of New York Mellon Corp.*, No. 11-cv-6969 (LAK) ("DoJ Action").

[8] *See* Dkt. No. 17 in DoJ Action.

On February 14, 2012, the court in the IUOE Local 39 Action (Judge William H. Alsup) denied BNYM's motion to dismiss.[9]  The parties then proceeded to discovery, producing a significant volume of documents and engaging in several depositions.

On March 12, 2012, OP&F and SERS filed an action in Ohio state court ("Ohio Action"), asserting claims for breach of contract, fraud, unjust enrichment, and violation of the Ohio Deceptive Trade Practices Act ("ODTPA").[10]  That case was later removed to the Southern District of Ohio, and plaintiffs filed an amended class-action complaint asserting claims for breach of contract, fraud in the inducement, unjust enrichment, conversion, breach of the implied covenant of good faith and fair dealing, and violation of the ODTPA.

On April 16, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") ordered that the SEPTA Action and the IUOE Local 39 Action were to be transferred, in accordance with 28 U.S.C. § 1407, to this Court for coordinated pretrial proceedings (the "MDL"), along with cases brought by plaintiffs other than custodial clients.[11]  On May 2, 2012, the JPML ordered that the Ohio Action was to be transferred to this Court as part of the MDL.[12]

On June 20, 2012, the Court appointed Lieff Cabraser and Kessler Topaz as interim Lead Class Counsel for the Customer Class Cases, and established a Plaintiffs' Executive Committee consisting of those firms and Bernstein Litowitz Berger & Grossmann LLP, who asserts federal securities claims on behalf of lead plaintiff Louisiana Municipal Police Employees' Retirement

---

[9] *See Int'l Union of Operating Eng'rs, Stationary Eng'rs Local 39 Pension Trust Fund v. Bank of N.Y. Mellon Corp.*, No. C 11-03620 WHA, 2012 U.S. Dist. LEXIS 18281 (N.D. Cal. Feb. 14, 2012).

[10] *Ohio Police & Fire Pension Fund, et al. v. The Bank of New York Mellon, et al.*, No. 12-cv-003214 (Ohio Ct. Com. Pleas, Franklin Cnty.).

[11] *See* MDL Dkt. No. 1.

[12] The SEPTA Action, IUOE Local 39 Action, and Ohio Action are referred to collectively as the "Customer Class Cases," and those plaintiffs as the "Customer Class Plaintiffs."  The Carver Action and the Fletcher Action are referred to collectively as the "ERISA Actions," and those plaintiffs as the "ERISA Plaintiffs."

System and a putative class of similarly situated BNYM shareholders against BNYM ("Securities Class Action").[13]  The Executive Committee was responsible for coordinating pretrial proceedings in the Customer Class Cases and the Securities Class Action with the DoJ Action, and later the NYAG's state-court case,[14] which was coordinated for discovery with the federal actions.

On December 19, 2012, Plaintiffs Carl Carver, Deborah Jean Kenny, and Edward C. Day initiated the Carver Action by filing a putative class complaint in this Court against The Bank of New York Mellon, BNY Mellon, N.A., and unnamed individuals designated as Does 1–20.  The complaint asserted claims for breach of duties of prudence and loyalty in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1104; engaging in self-interested prohibited transactions with plan assets in violation of ERISA, 29 U.S.C. § 1106(b); causing the plans to engage in party-in-interest prohibited transactions in violation of ERISA, 29 U.S.C. § 1106(a); and knowingly participating in prohibited transactions as a party-in-interest (seeking relief under ERISA, 29 U.S.C. § 1132(a)(3), for participation in a transaction prohibited by 29 U.S.C. § 1106(a)(1)).

This Court received briefing and ruled on several motions under Federal Rule of Civil Procedure 12(b)(6), including partially denying BNYM's motion to dismiss the SEPTA Action. The Court determined, *inter alia*, SEPTA plausibly alleged that BNYM breached its fiduciary duty of candor under Pennsylvania law by misrepresenting or failing to disclose that the Bank

---

[13] *See* MDL Dkt. No. 103 (Pretrial Order No. 2).

[14] *People ex rel. Schneiderman v. Bank of New York Mellon Corp.*, No. 114735/09 (N.Y. Sup. Ct.) ("NYAG Action").

would provide "FX execution under best execution standards" in connection with SI FX trades, and that the SI FX service was not part of the Bank's fiduciary responsibilities.[15]

After special jurisdictional discovery, plaintiffs in the Carver Action filed an amended complaint and then a second amended complaint.  Defendants moved to dismiss, in part, the second amended complaint, contending that some (but not all) named plaintiffs lacked standing and that one count pled in the alternative failed to state a claim.  That motion was fully briefed and pending when the parties reached the Settlement.

On July 2, 2013, the Customer Class Plaintiffs filed a Master Customer Class Complaint ("Master Complaint"), asserting claims on behalf of themselves and a putative class (including several putative subclasses) of BNYM custodial clients for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, violation of N.Y. GBL § 349, violation of California's UCL, and violation of the ODTPA and other state consumer-protection statutes.[16]

BNYM asserted counterclaims against SEPTA and IUOE Local 39, third-party claims against Paul Bensi, Lyle Setter, Jerry Kalmar, and Bart Florence in their representative capacity as Trustees of IUOE Local 39, and conditional counterclaims—for indemnification of attorneys' fees and expenses incurred by the Bank in connection with the Litigation—against unnamed putative class members, conditioned on a grant of class certification in the Customer Class

---

[15] *See In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 86-87 (S.D.N.Y. 2013) ("*SEPTA*").

[16] *See* MDL Dkt. No. 262.  OP&F and SERS filed an amended complaint in this Court following transfer.  BNYM moved to dismiss that complaint, and the Court denied that motion as moot following the filing of the Master Complaint.  *See* MDL Dkt. No. 271.

Cases.  The Court dismissed Defendants' conditional counterclaims against non-party putative class members as premature, but otherwise upheld the counterclaims and third-party claims.[17]

As the parties served discovery requests and negotiated their scope, the Court entered a scheduling order on September 12, 2013, setting an aggressive pretrial schedule, up to and including submission of a pretrial order.[18]  The Court later granted the parties' request for a 90-day extension, setting January 30, 2015 as the end of fact discovery and the deadline for the Customer Class Plaintiffs to move for class certification.

On July 22, 2014, Plaintiff Landol Fletcher initiated the Fletcher Action by filing a putative class complaint in this Court against The Bank of New York Mellon, BNY Mellon, N.A., and unnamed individuals designated as Does 1-20.  Fletcher filed that complaint after the Court denied his request to join the existing Carver Action but indicated he was free to file his own ERISA action if he wished.  Fletcher's complaint asserted claims for several violations of ERISA, i.e., breaching duties of prudence and loyalty, engaging in self-interested prohibited transactions with plan assets, and causing the plans to engage in party-in-interest prohibited transactions.

The parties conducted discovery with celerity to meet the Court-imposed schedule, including preparing for class-certification briefing and trial.  BNYM ultimately produced more than 19 million pages of documents, as well as a large volume of transactional data reflecting FX transactions executed for its custodial clients over the 13-year Class Period.  Plaintiffs produced more than one million pages.  In response to subpoenas served by BNYM and the DoJ, third-parties produced more than 2.8 million pages.  The parties took or defended a total of 128

---

[17] *See* MDL Dkt. No. 420.

[18] *See* MDL Dkt. No. 273.

1221791.4

depositions (seven of which took place over multiple days) in numerous locations around the country, including Alaska, California, Delaware, Georgia, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, Texas, and Wisconsin.  Depositions were also held in England and Scotland.  The depositions produced nearly 100,000 pages of recorded testimony and exhibits.

Various disputes arose during discovery, resulting in numerous discovery motions. Among them, BNYM filed two motions to compel the production of documents from the Customer Class Plaintiffs, one of which it later renewed, and a motion to compel the production of documents from a third-party.  The Customer Class Plaintiffs filed two motions to compel and two motions to limit the scope of third-party discovery, including of absent class members.

As Lead Plaintiffs prepared to move for class certification, the parties exchanged opening, rebuttal, and reply expert reports.  The Customer Class Plaintiffs disclosed two experts, the ERISA Plaintiffs disclosed two experts, and BNYM disclosed six experts, including five directed specifically at the Customer Class Cases and one at the ERISA Actions.

With fact discovery nearly complete, representatives of the Customer Class Plaintiffs, the ERISA Plaintiffs, the DoJ, the NYAG, and BNYM participated in a two-day mediation on January 19 and 20, 2015 before Layn Phillips.  The DoL joined a third day of mediation on February 4, 2015, which continued until 11:30 p.m. and resulted in a handshake agreement among all participating parties.  The parties then negotiated a term sheet, which they signed on February 13, 2015, and entered into the Stipulation on March 19, 2015.

B.     **The Settlement Affords Settlement Class Members Significant Monetary Relief in Exchange for Releasing Their Claims.**

The Settlement provides that, among other things:

- BNYM will pay $335 million into the Settlement Fund Escrow Account, which, along with $155 million from the NYAG Settlement (together, the "Settlement Fund"), will be distributed to Settlement Class Members in accordance with the Plan of Allocation for which Plaintiffs will seek the Court's approval.

- The Plan of Allocation proposed by Lead Plaintiffs and Lead Settlement Counsel will allocate at least $70 million of the gross Settlement Fund (prior to payment of (i) any Taxes and Tax Expenses, (ii) any Notice and Administration Costs, and (iii) any attorneys' fees and Litigation Expenses awarded by the Court) to ERISA plans that are members of the Settlement Class.

- Upon the Effective Date of the Settlement, Plaintiffs and Settlement Class Members will be deemed to have released and dismissed their claims, and will dismiss the Customer Class Cases and the ERISA Actions with prejudice.

- Upon the Effective Date, Defendants will release all Released Plaintiff Parties and Third-Party Defendants from all Released Defendant Claims.

- The Claims Administrator retained by Lead Settlement Counsel on behalf of the Settlement Class will, subject to the supervision, direction, and approval of Lead Settlement Counsel and the Court, administer and calculate the recoveries due to Settlement Class Members, oversee distribution of the Net Settlement Fund, and perform all other necessary and appropriate administrative tasks.

- Attorneys' fees and expenses of Plaintiffs' Counsel, as well as any Service Awards Plaintiffs request, to the extent approved by the Court, will be paid from the Settlement Fund Escrow Account as of the time the Court awards them, or at such later date as required by the Court, notwithstanding any appeals of the Settlement or the fee-and-expense award.

- Solely for purposes of the Settlement, the parties stipulate and agree to (i) certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) appointment of Lead Plaintiffs as Settlement Class representatives; and (iii) appointment of Lead Settlement Counsel as Class Counsel in accordance with Rule 23(g).

## ARGUMENT

## I.    The Proposed Settlement Class Should Be Provisionally Certified.

Before approving the Settlement, the Court "must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See id.* at 238-39. Indeed, certification of settlement classes "has been recognized throughout the country

-10-

as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith Corp. v. SESAC, LLC*, No. 09 Civ. 9177 (PAE), 2015 U.S. Dist. LEXIS 20055, at *17 (S.D.N.Y. Feb. 19, 2015).[19]   At this point, the Court need find only that a sufficient basis exists to deem Rule 23's prerequisites satisfied, thus allowing the parties to proceed to the final-approval stage, where the Court will make its ultimate determination regarding class certification.[20]

The parties have stipulated, solely for the purposes of the Settlement, to certification of the Settlement Class, appointment of Lead Plaintiffs as Settlement Class representatives, and appointment of Lead Settlement Counsel as Class Counsel.  As detailed below, the record before the Court suffices to demonstrate, at this stage, that (1) Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy—are met; and (2) as prescribed by Rule 23(b)(3), common questions of law or fact predominate over any questions affecting only individual Settlement Class Members, and a class action is superior to any alternative method of litigating these claims.  In assessing these factors, however, the Court "need not inquire whether the case, if tried, would present intractable management problems"—a prerequisite to certification of a litigation class—"for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997).  Further, while a class-certification analysis "must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim[s]," Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification

---

[19] Unless otherwise indicated, all internal citations have been omitted from this brief, and all emphasis added.

[20] *See In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 64 (D. Mass. 2010) ("*M3 Power Razor*") (granting conditional certification, court concluded, "On the present state of the record, I have found sufficient basis to permit notice of the proposed Settlement Agreement to go forward and to certify a class, without subclasses, solely for the purpose of settlement.").  As the court in *M3 Power Razor* observed:  "Preliminary review is necessarily conditional. . . . If, after notice has been sent and the Final Fairness Hearing has been held, it appears that the settlement is not fair, adequate, and reasonable in whole or in part, [the court] may require modifications either in the certification of the class or in the settlement or [the court] may reject settlement."  *Id.*

stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). Merits questions "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. In accordance with those principles, provisional certification of the Settlement Class is warranted.

**A.** **A Sufficient Basis Exists to Find that Rule 23(a)'s Prerequisites Are Satisfied at This Stage.**

**1.** **The Settlement Class is sufficiently numerous.**

Numerosity "generally is presumed at a level of 40 members, and may be found where the number of class members is sufficiently large so that joinder . . . would make litigation needlessly complicated and inefficient." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 232 (S.D.N.Y. 2012) (Kaplan, J.). Further, "[w]hile a party seeking class certification must prove there are in fact sufficiently numerous parties, [c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 535 (S.D.N.Y. 2013) (second alteration in original). Information provided by BNYM indicates there are approximately 1,262 members of the Settlement Class. Because joinder of all Settlement Class Members is "impracticable," numerosity "is appropriately found." *IndyMac*, 286 F.R.D. at 232.[21]

---

[21] *See also Hughes v. Gentronics Wang LLC*, No. 07-CV-10356 (LAK)(THK), 2009 U.S. Dist. LEXIS 101032, at *3 (S.D.N.Y. Oct. 21, 2009) (Kaplan, J.) (finding numerosity where class consisted of "approximately 748 Class Members," rendering joinder "impracticable").

2.    **Common questions of law and fact bind the Settlement Class.**

To establish commonality under Rule 23(a)(2), Lead Plaintiffs need only demonstrate

that this case involves at least one question of law or fact common to the Settlement Class.[22]  As

this Court has observed, the commonality requirement "does not mandate that all class members

make identical claims and arguments."  *Tsereteli v. Residential Asset Securitization Trust*, 283

F.R.D. 199, 206 (S.D.N.Y. 2012) (Kaplan, J.).  Commonality can be shown "where the

individual circumstances of class members differ but their 'injuries derive from a unit[ar]y

course of conduct by a single system.'"  *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565

(S.D.N.Y. 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  Numerous

questions of law and fact exist in this case, amply satisfying Lead Plaintiffs' "minimal burden."

*See Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 448 (S.D.N.Y. 2010).

Settlement Class Members' claims "depend upon a common contention."  *See Wal-Mart*,

131 S. Ct. at 2551.  They turn largely on whether BNYM's admitted SI FX pricing practice—

which the Bank applied consistently to all non-"benchmark" custodial clients[23]—was improper,

either because in doing so the Bank breached its contracts with Settlement Class Members or

their agents, or otherwise violated state common law or statutes, or ERISA.  That common

contention is, moreover, "capable of classwide resolution," as "determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Id.*

---

[22] *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("[e]ven a single [common] question will do") (alterations in original).

[23] *See* DoJ Stipulation.  As alleged, under "benchmark pricing," BNYM executed certain clients' SI trades at pre-negotiated fixed markups from a public reference price, rather than at the high or low end of the daily range.  Master Compl. ¶ 119.

Surrounding that polestar is a constellation of additional legal and factual questions common to Settlement Class Members' claims:

- Was BNYM's admitted practice with respect to SI FX transactions contrary to its representation to custodial clients, including ERISA plans, that its pricing would be "not less favorable to the [client] than terms offered by [the Bank] to unrelated parties in a comparable arm's length FX Transaction"?

- Was BNYM's admitted practice with respect to SI FX trades contrary to the Bank's statements on its website, in responses to Requests for Proposals ("RFPs"), and in other communications with its custodial clients or their agents, that the Bank provided "best execution," "the best rate," the "best possible rate," or "the best rate of the day" when conducting SI FX trades, or that those services were "free of charge," "designed to help clients minimize the risks and costs related to [FX]," and "reflect[ed] the interbank market at the time the trade[s] [were] executed"?

- If the custodial agreements did not expressly preclude the Bank's SI FX practice, did the practice nonetheless violate the covenant of good faith and fair dealing implied in those contracts?

- Did BNYM owe to Settlement Class Members fiduciary duties of loyalty or care that obligated the Bank to inform them or their agents of its SI pricing practice?

- If so, did the Bank's use of the SI pricing practice breach one or both of those duties?

- Did BNYM, through its SI pricing practice, unlawfully assume and exercise ownership over funds to which Settlement Class Members were entitled and would have received absent that practice, thus rendering the Bank liable for conversion?

- Was BNYM, by employing its SI pricing practice, unjustly enriched at Settlement Class Members' expense?

- Did BNYM's SI pricing practice constitute an unlawful, unfair, or deceptive practice under the consumer-protection laws of New York, California, Pennsylvania, Massachusetts, Delaware, and other states?

Those questions are common to Settlement Class Members' ability to prove BNYM's liability under the several causes of action Lead Plaintiffs assert on behalf of themselves and those Settlement Class Members.

Further, Lead Plaintiffs and Settlement Class Members would rely on common evidence to establish BNYM's liability, in several respects:[24]

*First*, Lead Plaintiffs would attempt to show that BNYM represented—on its website, in responses to RFPs, and in other direct communications with its clients or their agents—that, among other things, (1) the Bank would, and did, conduct SI FX trades according to "best execution" standards or to obtain "the best rate," the "best possible rate," or "the best rate of the day"; (2) the Bank was providing those services "free of charge," and they were "designed to help clients minimize the risks and costs related to [FX]"; and (3) its pricing "reflect[ed] the interbank market at the time the trade [wa]s executed."  Lead Plaintiffs would refer to, among other things, custodial agreements, RFPs, and other documents produced in discovery.

*Second*, Lead Plaintiffs would rely primarily on internal BNYM documents to attempt to demonstrate that BNYM and its predecessors engaged in a deceptive or otherwise unlawful practice to induce custody clients and their investment managers to utilize the SI service, through which the Bank reaped significant revenues by deliberately pricing clients' SI FX trades at or near the high end of the daily interbank range, for purchases, and at or near the low end of the daily interbank range, for sales.  That evidence would be used to support all Settlement Class Members' claims.

*Third*, Lead Plaintiffs would rely primarily on internal BNYM documents and testimony by Bank personnel to attempt to demonstrate that BNYM's FX executives understood that the Bank did not offer "best execution" or "best rates" to clients.

---

[24] Lead Plaintiffs provide these examples to demonstrate the propriety of provisionally certifying the Settlement Class.  Lead Plaintiffs appreciate that Defendants dispute liability and likely would contest Lead Plaintiffs' interpretation of much or all of the evidence they would proffer in attempting to obtain certification of a litigation class.

*Fourth*, Lead Plaintiffs would attempt to show, mostly through BNYM documents and testimony, that the Bank generated significant revenues from its SI FX practice, which outweighed any benefits custodial clients received.

*Fifth*, Lead Plaintiffs would attempt to show, also mostly through BNYM documents and testimony, that the Bank provided superior pricing on transactions comparable to those executed on behalf of Settlement Class Members, and the Bank was capable of extending such terms to all Settlement Class Members.

That Lead Plaintiffs would use common proof in pursuing the claims of all Settlement Class Members renders class treatment appropriate.[25]  The existence of certain variations among the laws governing Settlement Class Members' state-law claims does not undermine commonality,[26] because the elements of the claims under the laws of New York, California, Pennsylvania, Massachusetts, and Delaware—which apply to the vast majority of Settlement Class Members[27]—are substantially similar.[28]  This is particularly so with respect to claims for breach of contract/implied-covenant, breach of fiduciary duty based on misstatements or omissions, and

---

[25] *See, e.g.*, *Amgen*, 133 S. Ct. 1184, 1195-96 (because materiality could "be proved through evidence common to the class," it constituted a "common question") (alteration omitted).

[26] As a federal court sitting in diversity, this Court "unquestionably has the ability to adjudicate class action litigation that involves the application of numerous state laws." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 135 (S.D.N.Y. 2014).

[27] The Customer Class Plaintiffs' review of hundreds of custodial agreements provided by BNYM revealed that the vast majority contain choice-of-law provisions calling for the application of one of these states' laws.

[28] *See Rodriguez*, 300 F.R.D. at 135 ("[D]espite the possible existence of state law variations among plaintiffs' fraud and unjust enrichment claims, those claims can implicate common issues . . . so long as the elements of the claim[s] . . . are substantially similar.") (alterations and ellipsis in original).

unjust enrichment.[29]  And the law applicable to the ERISA claims of ERISA plans that are

Settlement Class Members is uniform.[30]

Additionally, damages are calculable on a Classwide basis through a uniform

methodology using the Bank's own data for FX SI transactions during the Class Period (January

12, 1999 to January 17, 2012), in accordance with *Comcast Corp. v. Behrend*, 133 S. Ct. 1426

(2013).[31]  Lead Plaintiffs' damages expert employed several measures to identify the difference

between the prices custodial clients actually received on their SI FX trades and the prices they

should have received had the Bank not priced them at or near the least favorable rate (for the

clients) of the applicable trading range.  That suffices under *Comcast*.

---

[29] *See, e.g.*, *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) ("state contract law defines breach consistently such that the question will usually be the same in all jurisdictions"), *cert. denied sub nom.*, *US Foods, Inc. v. Catholic Healthcare W.*, 134 S. Ct. 1938 (2014); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."); *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2014 U.S. Dist. LEXIS 123784, at *49 (S.D.N.Y. Sept. 4, 2014) ("The elements of unjust enrichment are similar in every state."); *Rodriguez*, 300 F.R.D. at 136 (observing that "a universal thread throughout all common law causes of action for unjust enrichment is a focus on the gains of the defendants," and concluding there was "a question [c]ommon to all class members and provable on a class-wide basis as to whether [d]efendants unjustly profited by making [mis]representations") (first and second alterations in original).  As noted above, in partially denying BNYM's motion to dismiss the SEPTA Action, the Court held that SEPTA stated a fiduciary-duty claim under Pennsylvania law to the extent it was based on BNYM's alleged failure to disclose relevant information regarding its SI FX practices.  *SEPTA*, 921 F. Supp. 2d at 88; *see also id.* at 71 n.82 (noting the parties agreed that Pennsylvania law applied to SEPTA's claims).  California, Delaware, Massachusetts, and New York likewise recognize such a claim. *See, e.g.*, *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 738-39 (2d Cir. 1984) ("under New York law, a duty to disclose material facts is triggered . . . where the parties enjoy a fiduciary relationship"); *Passatempo v. McMenimen*, 960 N.E.2d 275, 289 (Mass. 2012) ("a fiduciary owes a duty of full disclosure to his or her principal"); *Jones v. Conocophillips Co.*, 130 Cal. Rptr. 3d 571, 580 (Cal. Ct. App. 2011) ("typically, a duty to disclose arises when a defendant owes a fiduciary duty to a plaintiff"); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 156 (Del. Ch. 2004) ("When the fiduciaries communicate with the beneficiaries in the context of asking the beneficiary to make a discretionary decision . . . the fiduciary has the duty to disclose all material facts bearing on the decision at issue.").

[30] *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142-43 (S.D.N.Y. 2010) ("By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions.").

[31] *See, e.g.*, *US Foodservice*, 729 F.3d at 123 (where "customers [we]re entitled to the difference between the amount they paid on fraudulently inflated cost-plus invoices and the amount they should have been billed," plaintiffs' proposed measure of damages was "directly linked with their underlying theory of classwide liability (that the misrepresentations on the invoices caused overpayments)," and thus accorded with *Comcast*).

Indeed, the Second Circuit recently explained that *Comcast* "did not hold" that a class cannot be certified even where "damages cannot be measured on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). *Comcast* requires only that "a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Id.* Lead Plaintiffs' ability to demonstrate Classwide damages therefore well *exceeds Comcast*'s threshold.

Common questions thus abound with respect to both liability and damages. Class proceedings therefore have the capacity "to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original).

### 3.   Lead Plaintiffs' claims are typical of those of other Settlement Class Members.

Typicality—which, like adequacy of representation—is "closely related" to commonality,[32] also exists here. The typicality prong is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). As demonstrated above with respect to commonality, Settlement Class Members' claims arise from the same set of facts regarding BNYM's liability and their damages.[33] Indeed, the SI FX program at the heart of this Litigation involved, by the Bank's design, a uniform pricing methodology that was applied commonly to Settlement Class Members

---

[32] *IndyMac*, 286 F.R.D. at 233. "[A]ll three requirements 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* at 233 n.49 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 2370 n.13 (1982)).

[33] *See In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 U.S. Dist. LEXIS 42537, at *36 (S.D.N.Y. Mar. 28, 2014) ("Commonality and typicality tend to merge into one another, so that similar considerations animate analysis of both.").

throughout the Class Period.  Where, as here, "plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner, against all members of the class," plaintiffs "establish the necessary typicality."  *IndyMac*, 286 F.R.D. at 233.

### 4.  Lead Plaintiffs and Lead Settlement Counsel are adequate representatives of the Settlement Class.

Adequacy is also readily demonstrated here.  This inquiry addresses "whether 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Flag Telecom*, 574 F.3d at 35.  The Court must determine whether any "fundamental" conflicts of interest exist between Lead Plaintiffs and other Settlement Class Members.  *See id.*  There are no such conflicts here.

Lead Plaintiffs oversaw Lead Settlement Counsel's prosecution of these cases for nearly four years.  Lead Plaintiffs, among other things, collectively put forth 33 representatives for deposition and produced over one million pages of documents.  Further, Lead Plaintiffs' claims arise from the same core facts as the claims of other Settlement Class Members, and there is no feature of Lead Plaintiffs' claims, including any defense by the Bank, that would put them in conflict with other Settlement Class Members.  Lead Plaintiffs are therefore appropriate representatives of the Settlement Class.

In evaluating Lead Settlement Counsel's fitness to represent the Settlement Class, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Lead Settlement Counsel have worked tirelessly in pursuit of Settlement Class Members' claims, having developed and initiated these suits as early as 2011, and litigated them through years of motion practice, document review, fact-witness depositions, expert reports, and settlement negotiations.  Further, as detailed in the firm résumés attached to the Declarations of Daniel Chiplock of Lieff Cabraser, Sharan Nirmul of Kessler Topaz, and J. Brian McTigue of McTigue Law, respectively, these firms have decades of experience handling class actions, including claims based on alleged misconduct by financial institutions.

Further, Lead Settlement Counsel have demonstrated their command of the applicable law throughout this litigation, to the benefit of the Settlement Class.  Among other things, Lieff Cabraser and Kessler Topaz achieved important victories at the pleading stage, including with respect to BNYM's conditional counterclaims against absent class members, and on an important motion for a protective order against far-ranging discovery of third-parties by the Bank.  These firms also led key depositions relevant to all actions in the MDL and developed the expert evidence underlying the damages calculations on which all Plaintiffs in the Litigation relied in reaching this resolution.

Finally, Lead Settlement Counsel have devoted significant resources to prosecuting these cases.  They collectively spent thousands of hours, and incurred millions of dollars in out-of-pocket expenses, litigating their claims over the past four years.  While they shared deposition responsibilities with counsel in other cases in the MDL and the DoJ, Lieff Cabraser and Kessler Topaz led 19 of the 53 depositions the parties took of BNYM witnesses, and defended, in a lead or supporting capacity, 32 depositions of Customer Class Plaintiffs or their agents, reviewed and coded nearly 23 million pages of documents produced by others (primarily BNYM), reviewed and produced more than one million pages of documents from Plaintiffs, and generated

deposition-preparation materials based on their document review for numerous depositions led by Plaintiffs.  McTigue Law attended and took part in 13 depositions and was lead in two depositions of Defendants, including a Rule 30(b)(6) deposition of a database expert for Defendants regarding ERISA-plan data.  McTigue Law, in collaboration with other counsel for plaintiffs in the Carver and Fletcher Actions (Beins, Axelrod, P.C. and Keller Rohrback, LLP), searched, reviewed, and coded documents produced by Defendants and generated deposition-preparation materials based on their document review for those depositions.  Lead Settlement Counsel's efforts helped achieve this resolution, in which Settlement Class Members stand to obtain a significant recovery.  These three firms are thus well suited to serve as counsel for the Settlement Class.[34]

      **B.**      **A Sufficient Basis Exists to Find that Rule 23(b)(3)'s Prerequisites Are Satisfied at This Stage.**

            **1.**      **The claims of Lead Plaintiffs and Settlement Class Members implicate common questions that predominate over any individual issues.**

Common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *IndyMac*, 286 F.R.D. at 235-36.  The Supreme Court emphasized in *Amgen* that Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof."  133 S. Ct. at 1196 (emphasis and alterations in original).  Nor, as Judge Posner has explained, is predominance determined "simply by counting noses: that is, determining whether there are

---

[34] To the extent courts recognize "a fifth pre-condition to class certification," i.e., that "the identity of class members must be reasonably ascertainable by reference to objective criteria," that requirement is readily satisfied here.  *See Ebin*, 297 F.R.D. at 566-67.  All Settlement Class Members are current or former custodial clients of BNYM, and during discovery the Bank identified those entities and provided their last known addresses.

more common issues or more individual issues, regardless of relative importance." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014). To the contrary, "[a]n issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551). Further, as this Court has observed, "[p]laintiffs who have shown the existence of common questions are not obliged to prove the non-existence of possible individual issues—in the absence of any significant evidence of such issues—in order to obtain certification." *In re Lehman Bros. Sec. & ERISA Litig.*, No. 08 Civ. 5523 (LAK), 2013 U.S. Dist. LEXIS 13999, at *26 (S.D.N.Y. Jan. 23, 2013) (Kaplan, J.). Predominance exists here.

As detailed in Section I.A.2. above, numerous common questions bear on Defendants' liability and Settlement Class Members' damages. The significance of those questions is not outweighed by any issues particular to individual Settlement Class Members.

This is especially so because Settlement Class Members' claims turn largely on *the Bank's* actions, not on what custodial clients thought or did.[35] Further, the elements of those claims are governed largely by *objective* standards, which are susceptible of Classwide proof.[36]

---

[35] *See, e.g.*, Order on BNYM's Mot. for Protective Order (MDL Dkt. No. 502) at 8 ("The Bank's intent depends on what the Bank thought, not on what [absent class members] thought. It is, of course, the Bank that is in the best position to produce evidence as to its understanding [of the term 'best execution'] and the basis for it.").

[36] *See, e.g.*, *Amgen*, *supra* at n.25; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) ("'relief under the [California] UCL is available without individualized proof of deception, reliance, and injury'") (quoting *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009)), *cert. denied*, 132 S. Ct. 1970 (2012); *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116, at *20-24 (S.D.N.Y. Jan. 26, 2015) (certifying, *inter alia*, classes under N.Y. GBL § 349 and California's UCL); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 486 (Mass. 2004) ("Whether conduct is deceptive [under Massachusetts' consumer-protection statute] is initially a question of fact, to be answered on an objective basis and not by the subjective measure argued by the defendants.").

2.     **A class action is superior to other available methods for the fair and efficient adjudication of this controversy.**

Finally, resolving the Litigation through the class mechanism is superior to other available methods—i.e., litigation by individual Settlement Class Members—for fairly and efficiently adjudicating this controversy.  In the settlement context, this consideration focuses on:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.

Fed. R. Civ. P. 23(b)(3).

The alternative to certifying the Settlement Class—potentially 1,000 or more individual actions by BNYM custodial clients—would demand significant expenditures of resources by the parties and the judiciary, and would threaten to produce inconsistent rulings or judgments.[37] Further, only a few Settlement Class Members have filed individual actions, indicating that custodial clients may be satisfied with litigation of their claims through a class action.  It is also desirable to maintain Settlement Class Members' claims in this Court, given the Court's familiarity with these cases, as well as the JPML's determination that this Court is an appropriate forum to conduct pretrial proceedings arising from BNYM's allegedly improper FX practices.

The fourth "superiority" factor—"the likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D))—does not bear on a settlement-only class.[38]  Accordingly, any variations

---

[37] That Settlement Class Members are institutions, rather than individuals, does not alter the analysis.  *See, e.g.*, *IndyMac*, 286 F.R.D. at 243 (that some class members were "sophisticated and/or institutional investors" did not undermine superiority); *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) ("[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability.") (alteration in original).

[38] *See Amchem*, 521 U.S. at 620.

among the laws of the states that might apply to Settlement Class Members' claims "are largely irrelevant" to certification of the Settlement Class. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011) (en banc). That is, the Court need "not [be] as concerned with formulating some prediction as to how [variations in state law] would play out at trial, for the proposal is that there be no trial." *Id.* at 303 (second alteration in original); *accord Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 335 (S.D.N.Y. 2005) ("Because this is a settlement-only class, the Court need not be concerned with the feasibility of managing the trial of a class action involving many different states' laws."), *aff'd in relevant part sub nom.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006).[39]  In short, to paraphrase Judge Easterbrook:  "Given the [S]ettlement, no one need draw fine lines among state-law theories of relief." *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001).  Further, to the extent any Settlement Class Members who do not opt out believe that any differences between the laws of New York, California, Pennsylvania, or Ohio (all of which are asserted in the Master Complaint) and the laws of their respective jurisdictions present obstacles to certification of this Settlement Class, "such concerns can be fully aired at the fairness hearing." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 609 (W.D.N.Y. 2011).

In sum, a class action is the superior means for resolving Settlement Class Members' claims.  Further, the Settlement, if ultimately approved, will afford Settlement Class Members substantial relief while eliminating their risk of obtaining no recovery at trial.

---

[39] *See also In re Pool Prods. Distribution Mkt. Antitrust Litig.*, MDL No. 2328 Section: R(2), 2014 U.S. Dist. LEXIS 178989, at *27 (E.D. La. Dec. 31, 2014) ("state law variations are rightly viewed as creating primarily manageability concerns, which . . . the Court need not consider in the settlement context"); *In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 92 n.33 (D. Mass. 2005) (explaining that differences in state consumer-protection laws "do not pose a serious obstacle to certification," but that, "[i]n any event, the issue is one of manageability, which is not a consideration in the certification of a settlement class").

In light of the foregoing facts and authorities, the Court should provisionally certify the Settlement Class, appoint Lead Plaintiffs as Settlement Class representatives, and appoint Lead Settlement Counsel as Class Counsel.

## II.    The Court Should Approve The Proposed Form And Manner Of Notice To The Settlement Class.

Lead Plaintiffs respectfully ask the Court to approve the proposed Notice (*see* Ex. A-1 to the Stipulation) to be mailed to Settlement Class Members—all current or former custodial clients of BNYM—based on addresses maintained by the Bank, which the Claims Administrator will verify.  Lead Plaintiffs further request that the Court approve their selection of Garden City Group, LLC ("GCG") as Claims Administrator, which will entail issuing notice to the Settlement Class and otherwise administering the Settlement.[40]

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2).  Additionally, Rule 23(e) requires that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(h) also requires that notice of class counsel's motion for attorneys' fees and reimbursement of expenses be provided to class members.

The Notice includes all of the information Rule 23 prescribes.  It concisely states—in plain, easily understood language:

(1)     the nature of the lawsuit;

(2)     the definition of the Settlement Class;

---

[40] As detailed in the accompanying declaration of its representative Stephen Cirami (attached as Exhibit 2 to the Nirmul Declaration), GCG has significant experience administering recoveries obtained in complex class actions, including several before this Court.

(3)     Settlement Class Members' claims and BNYM's asserted defenses;

(4)     that a Settlement Class Member may enter an appearance through an attorney if it so desires;

(5)     that the Court will exclude from the Settlement Class any Settlement Class Member that timely and validly requests exclusion;

(6)     the time and manner for requesting exclusion;

(7)     a description of the terms of the Settlement, including information about Settlement Class Members' right to obtain a copy of the Stipulation;

(8)     the right of any Settlement Class Member to object to any aspect of the Settlement;

(9)     the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and

(10)    the date and time of the Final Approval Hearing.[41]

The Notice also advises Settlement Class Members that Lead Settlement Counsel will apply to the Court for an award of up to 25% of the $335 million Settlement Amount (they will not seek fees on the $155 million being distributed from the NYAG Settlement), as well as reimbursement of Litigation Expenses, and may also request Service Awards to Plaintiffs for the effort, time, and expense they spent in connection with the Litigation.  The Notice is thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).  It should therefore be approved.

---

[41] *See* Fed. R. Civ. P. 23(c)(2)(B).  The Notice also comports with the "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) included on the Federal Judicial Center's website.  *See* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.  Lead Plaintiffs have left blank the dates of the Final Approval Hearing in the proposed Notice so that the Court may provide a date and time convenient to it upon entering the Notice Order.  Other dates in the Notice are tied to the date the Notice Order is entered or to the mailing of the Notice, and are thus similarly left blank.

Additionally, Lead Plaintiffs propose to publish a summary notice ("Publication Notice"), substantially in the form attached as Exhibit A-2 to the Stipulation, once in the national edition of *The Wall Street Journal* and over the *PR Newswire*, shortly after the Court enters the Notice Order. The Publication Notice, which summarizes the principal terms of the Settlement and informs potential Settlement Class Members of their rights and how to obtain a copy of the Notice if they have not already received one, is appropriate.[42]

Finally, Lead Settlement Counsel will cause the Stipulation, as well as the Notice and Publication Notice (together, the "Notices"), and the Notice Order to be posted on a website dedicated to the Settlement's administration. These efforts—aimed to ensure that Settlement Class Members are apprised of their rights—are faithful to the letter and spirit of Rule 23.[43]

---

[42] *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81441, at *6 (S.D.N.Y. Nov. 8, 2006) (approving notice plan consisting of, *inter alia*, mailed notice and publication notice).

[43] Some courts within this District conduct a "preliminary evaluation of the proposed settlement," assessing whether it "appears to fall within the range of possible approval," before permitting notice to be disseminated to the proposed class. *See Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2009 U.S. Dist. LEXIS 108736, at *15 (S.D.N.Y. Nov. 17, 2009); *accord, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494 (RA), 2015 U.S. Dist. LEXIS 27111, at *3-4 (S.D.N.Y. Jan. 12, 2015) (addressing "preliminary approval" of proposed settlement, and finding that "the proposed Settlement Agreement is within the range of possible final settlement approval, such that notice to the class is appropriate"). Lead Plaintiffs understand that this Court has disapproved of requests for "preliminary approval" in other cases. *See, e.g.*, *In re IndyMac Mortg.-Backed Sec. Litig.*, No. 09 Civ. 4583 (LAK) (S.D.N.Y.), Dkt. No. 362; *In re Parmalat Sec. Litig.*, No. 04-md-1653-LAK-HBP (S.D.N.Y.), Dkt. No. 1177. Lead Plaintiffs accordingly do not seek "preliminary approval" of the Settlement. To the extent (if at all), the Court deems it relevant, however, Lead Plaintiffs respectfully submit that a "presumption of fairness, adequacy, and reasonableness may attach" to this Settlement, which was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S. Dist. LEXIS 96457, at *36 (S.D.N.Y. July 15, 2014). The Settlement follows more than two years of particularly intensive fact discovery, with the parties having produced and reviewed millions of pages of documents and engaged in 128 depositions. This extensive discovery afforded counsel ample information in assessing the value of the Settlement Class's claims and the risks all parties faced in continuing to litigate. The parties' representatives were thus well prepared to engage in meaningful negotiations, which were overseen by Layn Phillips, a highly capable and experienced mediator. Further, the Settlement is among the largest class settlements in recent years, and represents a substantial percentage of the maximum potential recovery at trial as calculated by Lead Plaintiffs' damages expert in connection with their forthcoming motions for class certification (a measure of damages disputed by BNYM). The $335 million payment alone equates to nearly 24% of the damages amount calculated by Lead Plaintiffs' expert, and Settlement Class Members' total expected recovery from this Settlement and the NYAG Settlement equates to approximately 35% of that damages amount (ERISA-plan Settlement Class Members will also receive $14 million through the DoL Settlement). Additionally, the terms of the related government settlements are known and presented to the Court, affording the Court a full picture of what the Settlement Class stands to receive.

*Footnote continued on next page*

1221791.4

III.    **Proposed Settlement Schedule**

Lead Plaintiffs propose the following schedule for the remainder of the Settlement-approval process:

- Lead Settlement Counsel will cause the Notice to be mailed, by first-class mail, postage prepaid **no later than 10 business days after the Court enters the Notice Order** ("Notice Date").

- Lead Settlement Counsel will cause the Publication Notice to be published, as discussed above, **within five calendar days of the Notice Date**.

- Lead Settlement Counsel will file papers in support of final approval of the Settlement, the Plan of Allocation, and the motion for an award of attorneys' fees, reimbursement of Litigation Expenses, and/or Service Awards **no later than 28 business days before the Final Approval Hearing**.

- **No later than 10 calendar days before the Final Approval Hearing**, Lead Settlement Counsel will serve on Defendants' Counsel, and file with the Court, proof—by affidavits or declarations—that the distribution, mailing, and publication of the Notices have been done in accordance with the Notice Order.

- Any person requesting exclusion from the Settlement Class must mail a written request, in the form prescribed by the Notice, to the address designated in the Notice, such that it is **received no later than 28 business days before the Final Approval Hearing**.

- Any Settlement Class Member that wishes to enter an appearance in the Litigation (at its own expense) can do so by filing a notice of appearance with the Clerk of the Court and delivering the notice to Lead Settlement Counsel and Defendants' Counsel, at the addresses provided in the Notice, such that it is **received no later than 21 business days before the Final Approval Hearing**.

- Any Settlement Class Member that has not requested exclusion from the Settlement Class and that wishes to object to the terms or conditions of the Settlement, or, if approved, the Order and Final Judgment to be entered in connection with the Settlement, the Plan of Allocation, the order(s) to be entered approving it, or the attorneys' fees, reimbursement of Litigation Expenses, or Service Awards requested must, **no later than 21 business days before the Final Approval Hearing**, (i) serve on Lead Settlement Counsel and Defendants' Counsel, by hand or overnight delivery to the addresses provided in the Notice, written objections (in the form prescribed by the Notice) setting forth the basis for

---

These facts further weigh in favor of approving the Notice and allowing Lead Plaintiffs to cause it to be disseminated to Settlement Class Members.

1221791.4

the objections, as well as copies of any supporting papers and briefs; and (ii) file the objections, papers, and briefs (showing due proof of service on Lead Settlement Counsel and Defendants' Counsel) with the Clerk of the Court.

- Lead Settlement Counsel will file any reply papers in further support of final approval of the Settlement, the Plan of Allocation, and the motion for an award of attorneys' fees, reimbursement of Litigation Expenses, and/or Service Awards **no later than seven business days before the Final Approval Hearing**.

- The Final Approval Hearing will be held **no earlier than 101 days after the Notice Order is entered**.[44]

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the Notice Order (1) provisionally certifying the Settlement Class; (2) appointing Lead Plaintiffs as Settlement Class representatives, and appointing Lieff Cabraser, Kessler Topaz, and McTigue Law as Class Counsel; (3) approving the form and manner of notice Lead Plaintiffs have submitted with this motion; and (4) scheduling a Final Approval Hearing.

Dated:  March 27, 2015                    Respectfully submitted,

                              **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

                              By: _____
                              Elizabeth J. Cabraser
                              Daniel P. Chiplock
                              Daniel E. Seltz
                              Michael J. Miarmi
                              Nicholas Diamand
                              250 Hudson Street, 8th Floor
                              New York, NY 10013-1413
                              Tel:    (212) 355-9500
                              Fax:   (212) 355-9592

                              *Interim Co-Lead Counsel for the Customer Classes*

---

[44] This will, among other things, allow the settling parties to comply with requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b).

**KESSLER TOPAZ MELTZER & CHECK, LLP**

Joseph H. Meltzer
Sharan Nirmul
Daniel Mulveny
Jonathan Neumann
280 King of Prussia Road
Radnor, PA 19087
Tel:    (610) 667-7706
Fax:    (610) 667-7056

*Interim Co-Lead Counsel for the Customer Classes*

**McTIGUE LAW LLP**

J. Brian McTigue
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC 20016
Tel:    (202) 364-6900
Fax:    (202) 364-9960

*Counsel for ERISA Plaintiffs: Carl Carver, Deborah Jean Kenny, Edward C. Day, Joseph F. Deguglielmo, Lisa Parker, Frances Greenwell-Harrell, and Landol D. Fletcher*

1221791.4